IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROSARIO SUAZO, *et al.*, | ) |
|           *Appellants*, | ) |
| v. | ) Civ. No. 1:24-cv-1561 (PTG/IDD) |
| JANET M. MEIBURGER, | ) |
|           *Appellee/Trustee.* | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Appellants Rosario Suazo, Nina Avielle Davis, and Danielle Andrea Davis' appeal of the United States Bankruptcy Court for the Eastern District of Virginia's August 20, 2024 oral ruling and September 3, 2024 Order and Appellants' Emergency (Second) Motion Seeking Stay Pending Appeal. Dkts. 1, 12. On November 10, 2022, Debtor Teresita Tiongson filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. On November 11, 2022, Appellee-Trustee Janet M. Meiburger ("Trustee") was duly appointed as the Chapter 7 Trustee in Ms. Tiongson's case. On January 17, 2024, Trustee initiated an adversary proceeding against Appellants Rosario Suazo, Nina Davis, and Danielle Davis. Trustee Meiburger sought: (1) a declaratory judgment that Debtor Teresita Tiongson is the sole beneficial owner of real property located at 4563 King Edward Court, Annandale, Virginia 22003 (the "Property"); and (2) to avoid the transfer of the Property to Debtor's granddaughters, Appellants Nina Davis and Danielle Davis.

In its August 20, 2024 oral ruling and September 3, 2024 Order, the bankruptcy court granted summary judgment to the Trustee, at which point it avoided and set aside the transfer of

1

the Property from the Debtor Teresita Tiongson and Appellant Rosario Suazo to Appellants Nina Davis and Danielle Davis. The bankruptcy court also declared that Trustee Meiburger is the sole legal and beneficial owner of the Property, and that Appellant Rosario Suazo has no interest in the Property. On September 5, 2024, Appellants filed their appeal with this Court. Dkt. 1. The parties have fully briefed this appeal. Dkts. 5, 6. On June 12, 2025, the Court heard oral argument on the matter. Dkt. 17. For the reasons that follow, the Court affirms the bankruptcy court's judgment.

## I.  BACKGROUND

### A.  Factual Background

The following relevant facts are undisputed and derived from the record in this case:[1]

On August 6, 2008, Lucila W. Tiongson, daughter of Teresita Tiongson ("Ms. Tiongson" or "Debtor"), purchased the Property with Primitivo Aluning Jr. as joint tenants with rights of survivorship. On August 5, 2015, Lucila died. Thereafter, Teresita Tiongson moved to the Property. On September 11, 2015, Mr. Aluning transferred the Property to himself, Teresita Tiongson, and Ms. Tiongson's sister, Rosario Suazo. Ms. Suazo did not pay anything to Mr. Aluning for this transfer. On January 31, 2017, Ms. Tiongson paid Mr. Aluning $30,000.00 in consideration for his equity in the Property so it would be transferred to Ms. Tiongson and Ms. Suazo exclusively. Only Ms. Tiongson participated in the negotiations with Mr. Aluning over the cost of his interest in the Property.

Ms. Tiongson owned a home health care agency, Alpha Health Resource LLC. On March 6, 2020, Alpha Health Resource received a loan from OnDeck Capital Inc. to cover its expenses. Ms. Tiongson was responsible for the loan payments. Around April 2020, Ms. Tiongson no longer

---

[1] Dkt. 24 ("Opp. to Mot. Sum. J.") at 1, *Meiburger v. Suazo, et al.*, No. 24-1007 (Bankr. E.D. Va. Jul. 22, 2024) ("For purpose of this motion, with the exception of the factual assertion made by the trustee in paragraph number 22, the defendant will accept as true all other assertions made by the trustee in paragraphs 1-32 of her motion.") (emphasis omitted).

made any payments on the loan. On August 7, 2020, while still in default on the loan payments, Ms. Tiongson and Ms. Suazo transferred the Property to Ms. Tiongson's granddaughters, Nina Avielle Davis and Danielle Andrea Davis. It appears that Ms. Tiongson wanted Ms. Suazo to transfer her interest in the Property. Ms. Tiongson has since lived at the Property with Nina Davis and Danielle Davis and paid the mortgage. Neither Ms. Suazo, Nina, or Danielle have paid mortgage payments, real estate taxes, or insurance for the Property, nor have they claimed a tax deduction on the property.

### B.   Bankruptcy Litigation

On November 10, 2022, Teresita Tiongson filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia.[2] Dkt. 1; *see also In re Teresita Tiongson*, No. 22-11540 (Bankr. E.D. Va. Nov. 10, 2022). On January 17, 2024, the Trustee timely filed her Complaint in an adversary proceeding, seeking a declaration that the Debtor was the sole beneficial owner of the Property at the time the Property was transferred and to avoid the conveyance of the Property to the Debtor's granddaughters. Dkt. 1, *Meiburger v. Suazo, et al.*, No. 24-1007 (Bankr. E.D. Va. Jan. 17, 2024) (raising claims under 11 U.S.C. §§544, 550 and Va. Code Ann. §§55.1-40, 55.1-401).

On July 1, 2024, the Trustee moved for summary judgment on Count I (Declaratory Judgment as to Ms. Tiongson's ownership) and Count III (Avoidance of Fraudulent Transfer). Dkt. 22 ("Mot. Sum. J."), *Meiburger v. Suazo, et al.*, No. 24-1007 (Bankr. E.D. Va. Jul. 1, 2024). On August 20, 2024, the Court held a hearing on the motion and granted summary judgment to the Trustee on both counts. Dkt. 27 ("Sum. J. Tr."), *Meiburger v. Suazo, et al.*, No. 24-1007 (Bankr. E.D. Va. Aug. 20, 2024). Specifically, the bankruptcy court held that the Debtor was the

---

[2] The Honorable Klinette H. Kindred presided.

3

sole beneficial owner of the Property at the time the Property was transferred, and that the Debtor was likely rendered insolvent by the transfer. *Id.* at 44:23-45:1; 50:19-24 . On September 5, 2024, Appellants timely appealed the bankruptcy court's August 20, 2024 oral ruling to this Court. Dkt. 1.

## II. ANALYSIS

### A. Legal Standard

Federal district courts are empowered to hear appeals from final judgments, orders, and decrees issued by the bankruptcy court. 28 U.S.C. § 158(a)(1). When considering an appeal from the bankruptcy court, "[d]istrict courts review a Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*." *Shin v. Lee*, 550 F. Supp. 3d 313, 318 (E.D. Va. 2021) (citing *Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja)*, 743 F.3d 423, 429 (4th Cir. 2014)). Mixed questions of law and fact are also reviewed *de novo*. *Id.* (citing *Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones), Inc.*, 492 F.3d 242, 249 (4th Cir. 2007)). According to the Supreme Court, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (alteration in original) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

At issue in this appeal is whether the bankruptcy court erred: (1) in declaring that Debtor was the sole beneficial owner of the Property; and (2) in finding that Debtor was likely rendered insolvent by the transfer of the Property. For the reasons that follow, the Court finds that the bankruptcy court did not err.

### B. Whether Debtor was the Sole Beneficial Owner of the Property

Appellants argue that the bankruptcy court erred in finding that Debtor was the sole

beneficial owner of the Property for two reasons. First, Appellants assert that the court erred in concluding that Debtor was the sole owner of the property on a theory of resulting trust. Dkt. 5 at 9-12. Second, Appellants contend that a Chapter 7 Trustee may not use a declaratory judgment to obtain control over property that is not considered part of the debtor's estate. *Id.* at 7-9.

As a preliminary matter, Appellants acknowledge that they failed to raise any of the foregoing arguments as to the ownership of the Property before the bankruptcy court. *Id.* at 11. Nonetheless, they contend this Court should still consider them because they concern a purely legal question, and Appellants should prevail under the plain error doctrine. *Id.* The law is well-settled that arguments not raised before the bankruptcy court may not be raised before the reviewing court on appeal, unless exceptional circumstances apply. *Levy v. Kindred*, 854 F.2d 682, 685 (4th Cir. 1988). Appellants have made no showing that exceptional circumstances exist. Therefore, the Court considers Appellants' arguments waived.

Even if Appellants had not waived these arguments, none are availing. According to Appellants, the use of a declaratory judgment was plain error because Ms. Suazo was no longer in possession of the Property at the time Trustee initiated this action. *Id.* at 8. Thus, they contend their challenge is jurisdictional because there was no actual controversy between Trustee and Ms. Suazo. *Id.* ("If no actual controversy exists, the court lacks subject matter jurisdiction to consider the claim."). They also assert it was plain error for the bankruptcy court to allow Trustee to use a declaratory judgment to bring Ms. Suazo's interest in the Property into the estate. *Id.* at 9. The Court disagrees.

The Court finds that there was an actual controversy, and Trustee sought to declare the ownership rights of the property with respect to Debtor. Despite Appellants' claims to the contrary, trustees are empowered to seek declaratory judgments to recover money or property

5

pursuant to Federal Rule of Bankruptcy Procedure 7001. Fed. R. Bankr. P. 7001(a), 7001(i). The Court rejects Appellants attempt to frame this as a jurisdictional issue now.[3]

Additionally, Appellants fail to show that they meet the plain error test. In order to determine whether a court should exercise its discretion to correct an error not raised below, an appellant must show "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines, after examining the particulars of each case, that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *In re Celotex Corp.*, 124 F.3d 619, 630-31 (4th Cir. 1997) (citing *United States v. Olano*, 507 U.S. 725, 730 (1993)). While Appellants appear to invoke the plain error doctrine, they have failed to meet any of the four elements. Specifically, Appellants have failed to show the bankruptcy court made an error or that it was plain.

Here, Trustee has sought to recover the Property under 11 U.S.C. §§ 544(b), 550 and Va. Code Ann. § 55.1-401 as a voluntary transfer or conveyance because Debtor transferred the Property to her granddaughters when she was insolvent. With respect to transfers avoided under Section 544, Section 550 permits the trustee to recover, for the benefit of the estate, "the property transferred [from] . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550. Under 11 U.S.C. § 541(a), "any interest in property that the trustee recovers under section . . . 550 of this title" is property of the estate. It is undisputed that at the time the transfer was made, Debtor and Ms. Suazo had an interest in the property. Trustee

---

[3] As Trustee notes, Appellants' contention about Trustee's inability to seek a declaratory judgment to acquire property that was not part of the estate essentially asserts that Count I of Trustee's Complaint failed to state a claim. Dkt. 5 at 8-9. Thus, this argument should have been raised before the bankruptcy court rather than on appeal for the first time. *Dean v. McDow*, 299 B.R. 133, 139 (E.D. Va. 2003) ("Failure to raise a non-jurisdictional issue before the bankruptcy court will generally be treated by the district court as a waiver of the right to have the issue heard on appeal." (citing *In re Lane*, 991 F.2d 105, 107 (4th Cir. 1993))).

asked the bankruptcy court to declare that only Debtor was the sole beneficial owner in the Property because Ms. Suazo's interest was held in a resulting trust for Debtor. Appellants concede that resulting trusts are recognized under Virginia state law. Dkt. 5 at 7; *see 1924 Leonard Rd., L.L.C. v. Van Roekel*, 636 S.E.2d 378, 383 (Va. 2006). Nonetheless, Appellants failed to rebut the presumption of a resulting trust before the bankruptcy court and also fail to do so before this Court. It appears Appellants attempt to create an issue of "plain error" by contending that the bankruptcy court did not consider Ms. Suazo's interest in the Property. Dkt. 5 at 7. It was undisputed that Ms. Suazo had an interest in the Property. Trustee, however, raised the argument, and the bankruptcy court agreed, that Ms. Suazo was not the beneficial owner because she held the Property in a resulting trust for Debtor. Sum. J. Tr. at 43:19-44:25.

Under Virginia law, a resulting trust arises from the "parties' intent or the nature of the transaction," where "the alleged beneficiary . . . pay[s] for the property, or assume[s] payment of all or part of the purchase money before or at the time of purchase, and ha[s] legal title conveyed to another without any mention of a trust in the conveyance." *1924 Leonard Rd., L.L.C.*, 636 S.E.2d at 383. There was no dispute that Debtor "paid for the property, the taxes, the insurance," and refinanced the Property. Sum. J. Tr. at 44:8-12. Moreover, Ms. Suazo never paid for anything concerning the Property, nor has she spent any time at the Property since 2015. *Id.* Thus, the Court finds no error in the bankruptcy court's conclusion that Ms. Suazo was not a beneficial owner of the Property under a theory of resulting trust. Because Appellants have not met the plain error test, Appellants' arguments as to this issue are waived.

### C. Whether Debtor was Rendered Insolvent by the Transfer

Appellants next assert that the bankruptcy court erred in concluding that Debtor was rendered insolvent by the transfer. Dkt. 5 at 13. "Insolvency is a question of fact . . . and the

findings of the Bankruptcy Court in this regard will not be disturbed unless they are clearly erroneous." *Heilig-Meyers Co., et al. v. Wachovia Bank, et al. (In re Heilig-Meyers Co.)*, 328 B.R. 471, 475 (Bankr. E.D. Va. 2005) (quoting *Lawson v. Ford Motor Co. (In re Roblin Industries)*, 78 F.3d 30, 35 (2nd Cir. 1996) (internal citations omitted)). "An insolvent debtor's financial condition is such that 'the sum of such entity's debts is greater than all of such entity's property, at a fair valuation.'" *Id.* at 477 (quoting 11 U.S.C. § 101(32)(A)) (emphasis in original)). "Stated differently, the dollar value of the debtor's debts exceed his assets." *Id.*

Appellants contend that the bankruptcy court improperly accepted the proof of claims and Debtor's schedules as evidence of Debtor's liabilities at the time the Property was transferred. Dkt. 5 at 13. According to Appellants, proof of claims and the schedules a debtor files with a bankruptcy court cannot be used to prove the extent of a debtor's liabilities on the transfer date. *Id.* Appellants appear to argue that because Trustee did not precisely prove that Debtor's liabilities exceeded her assets on the transfer date, Trustee did not carry her burden of proving Debtor's insolvency. Thus, Appellants submit there is a genuine dispute of material fact as to Debtor's insolvency. *Id.* at 16. The Court disagrees with Appellants and finds that the bankruptcy court did not commit clear error in concluding that Debtor was likely rendered insolvent by the transfer of the Property.

On a motion for summary judgment, the moving party has the burden of showing there is no genuine dispute of material fact. *In re McEvoy*, 37 B.R. 197, 199 (Bankr. E.D. Va. 1984). "A court generally must view the record in a light more favorable to the party opposing the motion for summary judgment." *Id.* (citing *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157 (1970)). Here, no party disputes that the appropriate method to determine insolvency is the balance sheet test. "The balance sheet test for insolvency determines whether the debtor was insolvent when the

8

transfer was made . . . [and] involves the comparing of the fair value of the debtor's assets at the time of the transaction with the debtor's liabilities on the same date." *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 282 (Bankr. E.D. Va. 1999) (citing *In re Miller & Rhoads, Inc.*, 146 B.R. 950, 955 (Bankr. E.D. Va. 1992)).

Appellants' contention that the bankruptcy court erred in assessing Trustee's evidence in the form of the proofs of claims filed against Debtor, Debtor's bank statements, and reference to Debtor's schedules is flawed. As stated above, the balance sheet test is a fact-intensive inquiry. Appellants appear to challenge whether Trustee has carried her burden in proving Debtor's insolvency because the bankruptcy court concluded that it was more likely than not that Debtor was rendered insolvent by the transfer. In reviewing the evidence in the record below, the Court can find no clear error in the findings of the bankruptcy court.

Appellants' authority suggests that schedules may not provide *conclusive* proof of a debtor's insolvency at the time of a transfer. *In re Strickland*, 230 B.R. at 283-84 (considering Debtor's schedules because they were the only proof offered); *Ruby v. Ryan, (In re Ryan)*, 472 B.R. 714, 727-28 (Bankr. E.D. Va. 2012) (acknowledging that taking judicial notice of a debtor's schedules standing alone may be insufficient to establish insolvency while still applying the retrojection rule). The record reflects that the bankruptcy court mathematically applied the balance sheet test against all of the evidence both parties proffered and concluded there was no genuine dispute of material fact as to Debtor's insolvency. Sum. J. Tr. at 45:10-14. Moreover, Appellants' authority does not suggest how courts should weigh proof of claims but notes that schedules standing alone may not be enough.[4] Specifically, because courts may use schedules in a

---

[4] Appellants appear to vaguely question the use of proof of claims in this analysis but offer no authority to support this proposition. Dkt. 5 at 19.

9

retrojection analysis, it appears schedules may be used in conjunction with other evidence as the bankruptcy court did here. *In re Strickland*, 230 B.R. at 282-85 (concluding that because the trustee only relied on debtor's schedules to prove insolvency where they only spoke to solvency on the petition date, the trustee did not carry her burden).

Trustee asserted that at the time of the August 7, 2020 transfer, Debtor's assets included the Property and her business, Alpha Health Resource, LLC. Sum. J. Tr. at 45:15-22; Mot. Sum. J. at 3-4. No party disputes that Alpha Health Resource was failing such that Debtor had to borrow money from her granddaughter's inheritance to cover some of its debts. Thus, Debtor's primary significant asset was the Property. Appellants have argued that these items do not present a complete picture of Debtor's assets. The bankruptcy court, however, acknowledged Debtor's declaration filed in opposition to the motion for summary judgment, asserting that Debtor had: (1) $125,000 in an E-Trade brokerage account; (2) insurance policies, monthly pension, and social security payments from Alpha Health; (3) a Wells Fargo checking account worth approximately, $134,692.84; (4) two 529 accounts collectively worth $45,000; and (5) a Wells Fargo savings account worth approximately $8,000. Sum. J. Tr. at 46:5-16. In total, Debtor calculated these assets to be worth approximately $300,000. *Id.* Nonetheless, the court concluded that, under the sham affidavit rule and Debtor's undisputed testimony that Alpha Health experienced significant financial distress around the time of the transfer, it would discount whatever value could be assigned to Alpha Health and Debtor's contradictory testimony that Debtor had stocks in an E-Trade brokerage account. *Id.* at 46:17-25, 47:1-21.

Appellants argue that the bankruptcy court erred in assigning essentially no value to Alpha Health. Dkt. 5 at 21. The Court disagrees. At the outset of the insolvency analysis, a court typically determines whether a corporate debtor is a "going concern" or "on [its] deathbed." *In re*

*Heilig-Meyers Co.*, 328 B.R. at 477. This distinction usually "dictates whether to value the debtor's assets based on their liquidation value or the value they would fetch if sold over a reasonable period of time; the assumption being that a going concern could wait for a better offer and presumably a higher price." *Id.*

Here, Debtor is an individual person, as opposed to a corporate debtor, and neither party has offered authority specifying the appropriate method of valuation for Alpha Health. The bankruptcy court noted that there was no dispute as to the facts that: (1) Alpha Health was experiencing severe financial distress at the time of the transfer; (2) Alpha Health shut down shortly after the Property was transferred; (3) Alpha Health's failure pushed Debtor into bankruptcy; and (4) "significant portions of Debtor's debts in this case spring from guarantees for loans for Alpha Health." Sum. J. Tr. at 47:1-21. Debtor's declaration states that Alpha Health had value because it paid her back $10,000 in August and September of 2020 and $30,000 in October of 2020. Opp. to Mot. Sum. J., Ex. 1 ("Tiongson Decl.") ¶ 21. Nonetheless, accepting this as true, Appellants offer no further support for how these payments would factor into Alpha Health's valuation, nor do they ascribe a particular value to Alpha Health.

As to the brokerage account, the court determined that even if it accepted both the Wells Fargo checking account and the brokerage account, the resulting total of $259,692.84 in assets would not overcome Debtor's approximate $347,000 in liabilities. Sum. J. Tr. at 47:22-48:7. The court credited the following of Trustee's evidence: (1) two 2019 promissory notes, collectively worth $70,000, which Appellants do not dispute existed nor present any evidence to suggest that they were paid; (2) one proof of claim on a 2020 $85,000 OnDeck loan worth $111,000 presently and owed in May of 2020 and in November of 2020; (3) one proof of claim on a 2019 $100,000 M&T Bank loan whose principal balance has only reduced by $1,000 presently; and (4) one proof

11

of claim on a 2017 $50,000 PNC Bank loan. *Id.* at 48:8-50:18. The Court determined that whatever the true amount owed on the M&T bank loan and the PNC Bank loan on the transfer date, it is unlikely to "overcome the difference between the asserted value of the debtor's E-Trade account and Wells Fargo account, the available assets, and the debtors' liabilities." *Id.* at 49:16-19, 50:8-18.

Ultimately, the bankruptcy court concluded that Debtor was likely incurring a deficit between $70,000 and $87,492.00 on the transfer date.[5] *Id.* at 49:20-50:11. The court reasoned that there is no evidence in the record to suggest that Debtor had paid this amount of its debts on the transfer date and inexplicably "re-incurred such amounts after the transfer was made." *Id.* at 50:8-11. The Court notes that the standard on a motion for summary judgment requires the moving party to present evidence showing there is no genuine dispute of material fact as to any issue such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056.

While a determination of insolvency is a fact-specific inquiry, the Court can find no clear error in the bankruptcy court's conclusion that Trustee has presented evidence showing that Debtor

---

[5] The Court observes that the bankruptcy court's oral calculations appear to be based only on the Wells Fargo Checking Account and brokerage account and rely on Trustee's assertion of Debtor's liabilities. At the lower end, the Court finds the liabilities amount to $334,744.20 based on the following: (1) two $37,500 promissory notes; (2) the $111,181 OnDeck loan; (3) the $99,260.70 M&T loan; (4) the $47,350.90 PNC loan; and the (5) $1,951.26 student loan. At the higher end, total liabilities amounted to $349,123.32, assuming the balances of the M&T and PNC loans were $111,357.78 and $49,632.94 respectively. In contrast, Debtor's assets amounted to $268,353.46, in view of the $125,000 E-Trade account, the $134,692.84 Wells Fargo Checking Account, and the $8,660.62 Savings Account. Thus, Debtor was left with a deficit between $66,390.74 and $80,769.86. Again, each of the calculations assumes that the brokerage account and Wells Fargo accounts are properly included as among Debtor's assets. As stated above, the Court agrees with the bankruptcy court, however, that under the sham affidavit rule, there is reason to believe they should not be. Despite the imprecision in the calculation, the result is the same. Debtor was likely rendered insolvent by the transfer because her liabilities likely exceeded her assets.

was likely rendered insolvent by the transfer of the Property. Even after construing all evidence in the light most favorable to the non-moving party, the bankruptcy court concluded that Appellants have failed to show there is a genuine dispute of material fact as to Debtor's insolvency because it appeared that Debtor was rendered insolvent by the transfer. Appellants did not dispute the existence of these debts on the transfer date or present evidence suggesting that these debts did not exceed Debtor's assets on or after the transfer date before the bankruptcy court and do not do so here. Although Appellants argue that the bankruptcy court's conclusion is based on speculation, Appellants ignore the fact that the bankruptcy court analyzed each of Debtor's debts and accepted Debtor's evidence of its assets in its calculation. As stated above, the bankruptcy court applied the balance sheet test accounting for the brokerage and Wells Fargo accounts and nonetheless concluded that Debtor was still likely rendered insolvent by the transfer.

Even Appellants' out-of-circuit authority says that all that is required on a motion for summary judgment is that "[the moving party] must make a *prima facie* case strong enough to justify depriving the other party of her day in court." *In re Scarbrough*, 2019 WL 1418698, at *2 (B.A.P. 6th Cir. Mar. 28, 2019). In addition, a motion for summary judgment may still be denied even if the non-moving party does not present contradictory evidence. *Id.* at *3. What matters is whether the moving party has "la[id] out all the elements of her claim by citing facts supporting each element of her case, without the court drawing inferences in her favor, and . . . demonstrat[ed] . . . [that] the record is so one-sided as to rule out the possibility that the non-moving party would prevail at trial." *Id.*

Therefore, the Court cannot conclude that—after considering Trustee's evidence supporting Debtor being rendered insolvent by the transfer as well as Debtor's declaration as to the existence of other assets—the bankruptcy court's finding of Debtor's insolvency is clearly

erroneous. Although the precise amount of Debtor's liabilities on August 7, 2020 is unknown, the bankruptcy court did not err in concluding that Trustee had presented evidence showing that there was no genuine dispute as to whether Debtor was rendered insolvent by the transfer such that the issue need not proceed to trial. Accordingly, the Court finds that the bankruptcy court, did not err in granting summary judgment to Trustee on Count III of the Complaint.

**C.      Second Motion to Stay**

Lastly, Appellants renew their motion to stay the bankruptcy court's order. For the reasons stated above, the Court denies the motion to stay as moot.

### III.     CONCLUSION

For the foregoing reasons, the Court finds that the bankruptcy court did not err when it found that Debtor was likely rendered insolvent by the transfer. Thus, the Court finds that the bankruptcy court correctly granted judgement in favor of Appellee-Trustee on Counts I and III of her complaint in her adversary proceeding against Debtor. Accordingly, it is hereby

**ORDERED** that the bankruptcy court's August 20, 2024 Judgment and September 3, 2024 Order is **AFFIRMED**; and it is further

**ORDERED** that Appellants' Emergency (Second) Motion Seeking Stay Pending Appeal (Dkt. 12) is **DENIED** as moot.

It is **SO ORDERED.**

Entered this 20th day of June, 2025
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge